**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **VUK MILICEVIC,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 5:26-CV-00860** |
| | § | |
| **MIGUEL VERGARA,** *et al.*, | § | |
| | § | |
| **Respondents.** | § | |

**ORDER**

Pending before the Court is Petitioner Vuk Milicevic's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. 1), challenging the lawfulness of his detention by Immigration and Customs Enforcement (ICE) officials with the Department of Homeland Security (DHS).

For the following reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**.

**Background**

Petitioner is a native and citizen of Montenegro who entered the United States as a nonimmigrant exchange visitor in 2021. (Dkt. 1 at 3; Dkt. 6 at 2.) Petitioner has lived in the United States for approximately five years and is in a bona fide marriage with a United States Citizen who filed a Form I-130 Petition for Alien Relative on Petitioner's behalf which remains under review by the United States Citizenship and Immigration Services (USCIS). (*See* Dkt. 1 at 4; Dkt 6 at 2.) Petitioner was detained by immigration authorities at a traffic stop and taken into custody on September 17, 2025. (*Id.*) While in detention, Petitioner requested a custody redetermination from

1 / 8

an immigration judge (IJ) under 8 U.S.C. § 1226(a) and on September 26, 2025, an IJ denied Petitioner's request finding that he had not met his burden of showing that he would not be a flight risk if released from custody. (Dkt. 6 at 2, Attach. 3.)[1] On November 14, 2025, an IJ denied Petitioner's request for adjustment of status given that his I-130 was still pending with USCIS, and ordered Petitioner removed to Montenegro. (Dkt. 1 at 5; Dkt. 6, Attach. 4.) Shortly after, Petitioner filed a motion to reconsider, or alternatively, to reopen proceedings with the immigration court, which the IJ denied. (Dkt. 1 at 5–6.) On November 27, 2025, Petitioner filed a Notice of Appeal of his removal order which remains pending with the Board of Immigration Appeals (BIA). (Dkt. 1 at 6; Dkt. 6 at 3; Dkt. 10 at 1.)

Petitioner filed his Petition for Writ of Habeas Corpus on May 8, 2026. (Dkt. 1.) Petitioner argues that his current prolonged detention violates his rights under the Fifth Amendment Due Process Clause. (*Id.* at 10–12.) Petitioner also raises claims of severe and ongoing medical neglect on the grounds that medical personnel at Webb County Detention Center have failed to provide adequate treatment for the serious neurological and respiratory symptoms he is suffering. (*Id.* at 7–8.) The Court ordered Respondents to respond to Petitioner's Petition on or before May 15, 2026, and to include information on how they have treated Petitioner's medical concerns. (Dkt. 4.) Respondents filed a timely response and Motion for Summary Judgment, arguing that Petitioner is lawfully detained under 8 U.S.C. §1226(a), and that Petitioner does not present a legal basis to challenge his detention under the Fifth Amendment. (Dkt. 6). Petitioner filed a timely reply to Respondents' response maintaining that his current prolonged detention violates his Fifth Amendment due process rights. (Dkt. 8.)

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

2 / 8

**Discussion**

The issue before the Court is whether Petitioner's prolonged detention under 8 U.S.C. § 1226(a) for nearly ten months while his removal proceedings remain ongoing violates his rights under the Due Process Clause of the Fifth Amendment.[2] As an initial matter, Respondents argue that the Court is stripped of jurisdiction from reviewing the IJ's discretionary decision to deny bond or Petitioner's removal proceedings. (Dkt. 6 at 4–7.) First, the Court finds that 8 U.S.C. § 1226(e) does not strip the Court of jurisdiction because Petitioner is not challenging the IJ's decision to deny bond but is alleging a constitutional challenge to the extent of DHS's authority to detain him for a prolonged period under § 1226(a). *See Khedr v. Warden, LaSalle County Regional Detention Center, et al.*, 2026 WL 1873712, at *3 (S.D. Tex. June 25, 2026) ("*Khedr v. Warden*"). Second, Petitioner does not have an administratively final order of removal nor is he challenging his underlying removal proceedings. (*See* Dkt. 1; Dkt. 10 at 1); *see also* 8 C.F.R. 1241.1 (stating an order of removal becomes final "upon dismissal of an appeal by the Board of Immigration Appeals"). Thus, the Court retains jurisdiction to review Petitioner's constitutional claims that his detention has become unconstitutionally prolonged.[3] *See Oyelude v. Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005) ("We retain jurisdiction to review [a noncitizen's] detention insofar as that

---

[2] At this time, the Court declines to address Petitioner's additional claims relating to the conditions of his confinement which remain pending before the Court. (*See* Dkt. 1 at 7–8.)

[3] Respondents also argue that the Court does not have jurisdiction over the habeas petition on the grounds that Petitioner has failed to exhaust his administrative remedies because he did not appeal the IJ's decision to deny bond to the BIA. (Dkt. 6 at 5–6.) However, as the Court has established, Petitioner is not challenging the IJ's discretionary decision to deny bond but is challenging the constitutionality of his detention. There is no exhaustion requirement when challenging detention procedures on constitutional grounds. *See Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 680–81 (W.D. Tex. 2025); *Hernandez-Fernandez v. Lyons*, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025).

detention presents constitutional issues."); *see also Nielsen v. Preap*, 586 U.S. 392, 401–02 (2019); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015).

Upon review of the merits of Petitioner's case, the Court finds that Petitioner's due process claim presents nearly identical legal questions to those the Court previously considered in *Khedr v. Warden*. In *Khedr v. Warden*, the Court held that the petitioner, a noncitizen who entered the United States on a B-2 visa, was entitled to Fifth Amendment protections from arbitrary and punitive civil immigration detention, and that the appropriate framework to decide whether the petitioner's detention under 8 U.S.C. § 1226(a) had become unconstitutionally prolonged was the test the Supreme Court set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* 2026 WL 1873712, at *4–5. The Court adopts its reasoning as previously articulated in *Khedr v. Warden* and analyzes Petitioner's claims under each *Mathews* factor.

Here, the Court finds that all three *Mathews* factors weigh in favor of Petitioner. Under the test set out in *Mathews* the Court evaluates "(1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citing *Mathews*, 424 U.S. at 335).

First, Petitioner's private interest is "the most elemental of liberty interests—the interest in being free from physical detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) and *Parham v. J. R.*, 442 U.S. 584, 600 (1979)). Moreover, "[t]he Supreme Court has repeatedly affirmed that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Hernandez-Lara v.*

4 / 8

*Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987). In addition, "[t]he longer the duration of the incarceration, the greater the deprivation." *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020). Petitioner has been detained for nearly 10 months, the same length of detention that other circuits have found to be unreasonably prolonged. *See Hernandez-Lara*, 10 F.4th at 29–30. Furthermore, "[t]he exact length of detention under section 1226(a) is impossible to predict and can be quite lengthy." *Id.* at 29; *see also Velasco Lopez*, 978 F.3d at 852 ("Absent release on bond, detention lasts through the initial removal determination proceedings (which themselves can take months or years) and all inter-agency and federal court appeals, even where an individual has prevailed and the Government appeals."). Given the pending BIA appeal of his removal order that Petitioner filed in November 2025, there remains no clear end to his detention under § 1226(a) absent intervention from this Court. Indeed, "[t]here is no administrative mechanism by which [Petitioner] could have challenged his detention on the ground that it reached an unreasonable length." *Velasco Lopez*, 978 F.3d at 852.

Second, the risk of erroneous deprivation in Petitioner's case is high, and the probable value of additional procedural safeguards is great. The Supreme Court has recognized that generally, immigration detention has "two regulatory goals: 'ensuring the appearance of aliens at future immigration proceedings' and '[p]reventing danger to the community.'" *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006) (generally when making a custody determination, an immigration judge considers whether the noncitizen "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk"). Therefore, if Petitioner is "being detained despite the fact that he is neither a flight risk nor a danger to the community, the Government is erroneously depriving him of his freedom." *See Rashid v. Trump*, 807 F. Supp. 3d 349, 369 (D. Vt. 2025). Detained noncitizens experience

significant challenges in meeting their burden under § 1226(a) to prove that they are not a danger or a flight risk. *See Hernandez-Lara,* 10 F.4th at 30–31 (citing several factors including the lack of counsel, limited English proficiency, lesser familiarity with immigration law and procedures, and difficulty in gathering evidence or proving a negative as creating a heighted risk of erroneous deprivation). Moreover, "'as the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Velasco Lopez*, 978 F.3d at 853. Here, Petitioner received only minimal process in the form of a bond hearing that was conducted over nine months ago at which he bore the burden of proof. Thus, there is substantial risk that Petitioner has been erroneously deprived of his freedom such that the second *Mathews* factor weighs heavily in his favor.

Finally, the Court considers the Government's interest and finds that its interest in detaining noncitizens for a prolonged period of time when they are not a danger or a flight risk is minimal. The decision to detain individuals under § 1226(a) is valid in so far as it serves the legitimate governmental interests of ensuring appearance for removal proceedings and keeping the public safe. *See Velasco Lopez*, 978 F.3d at 854; *Demore v. Kim*, 538 U.S. 510, 518–21 (2003). However, additional procedural safeguards in the form of a bond hearing "do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." *See Black v. Decker*, 103 F.4th 133, 153–54 (2d Cir. 2024) (citing 8 U.S.C. § 1226(a)). There is minimal administrative burden where immigration courts already regularly make custody determinations for noncitizens pending their removal proceedings. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19; 8 C.F.R. § 236.1. Indeed, requiring that the Government justify continued detention *promotes* the Government's interest in minimizing the enormous

6 / 8

impact of incarceration in cases where it serves no purpose. *Black*, 103 F.4th at 153–54 (quoting *Velasco Lopez*, 978 F.3d at 854). Similarly, should the Government find that Petitioner is not a flight risk nor a danger, the Government benefits from the reduced cost of no longer detaining Petitioner. For example, Petitioner has lived in the United States for five years and is in a bona fide marriage with a United States Citizen who has indicated her intent to support him for the duration of his removal proceedings. (*See* Dkt. 1 at 11–12, Attach. 15.) Therefore, the Court finds that the final *Mathews* factor also weighs in Petitioner's favor.

Thus, because Petitioner's detention has become unconstitutionally prolonged and is likely to continue as his removal proceedings remain ongoing, he is entitled to equitable relief.  The Court holds that the appropriate remedy is a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that continued detention is needed to prevent the Petitioner from fleeing during his removal proceedings or harming the community. *See, e.g.*, *Valladares Mata v. Bond*, 2026 WL 1146779, at *3 (S.D. Tex. Apr. 27, 2026).

### <u>CONCLUSION</u>

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus, (Dkt. 1), is **GRANTED IN PART**. Respondents' Motion for Summary Judgment, (Dk. 6), is **DENIED**.

1.      Respondents are **ORDERED** to provide Petitioner with a new individualized custody review before an immigration judge at which the Government bears the burden of proving, **<u>by clear and convincing evidence</u>**, that Petitioner presents a risk of flight or a danger to the community. At the bond hearing, the Immigration Judge is also directed to consider the availability of alternatives to detention and conditions of supervision in determining whether Petitioner is a flight risk. Respondents must provide this hearing **<u>within 7 days of the issuance of this Order, or else release Petitioner.</u>**

7 / 8

2. Respondents are **ORDERED** to submit a status report informing the Court of the result of the hearing and Petitioner's custody status within **8 days of the issuance of this Order.**

IT IS SO ORDERED.

SIGNED this July 1, 2026.

Diana Saldaña
United States District Judge